Case number 233680 Long Point Energy v. Gulfpoint Energy Corporation, et al., oral argument not to exceed 15 minutes per side. Mr. Hogan, you may proceed for the appellants. Thank you. Yes, for the rebuttal, I would like to reserve five minutes. Very well. May it please the Court, Chris Hogan on behalf of Appellant Long Point Energy. During my argument today, I wish to convey that there are three independent grounds on which this Court can and should reverse the trial court's summary judgment in this matter. The first of those grounds is the trial court's refusal to consider the Belmont Electric right-of-way, which under Ohio law should have been considered in this case. The second is the trial court's not considering the source deed, which was incorporated by reference into the 1948 deed and thus should have been considered. And then third, separate and apart from the source deed and the Belmont Electric right-of-way, if you just look at the 1948 deed, just the four corners of the document, even looking just at that, the trial court was incorrect that the construction of the agreement should be unambiguously in favor of appellees. And so for each of those independent reasons Why don't you go through them? Sure. Let me ask you this. So the judge says unambiguously this thing only applies to the second track that's listed, right? Yes. Your argument is no, it applies to both of them. Yes. If there is an ambiguity, do we construe the deed against the draft or, in other words, if there's an ambiguity, there's just a victor, somebody wins or loses, or is there an opportunity to go to a jury on parole evidence and what happens to construing it against the grantor? Yes. So in this instance, if there was a finding of ambiguity, the question would then go to, is there extrinsic evidence for either side? And if there is extrinsic evidence, which in this case there is, that would support our reading, then the extrinsic evidence would need to be considered by a fact finder. The presumption, the drafting against the drafter of the grantor would only come into play in the event that there were no relevant extrinsic evidence. Or that the extrinsic stuff didn't really answer the question. Yeah, relevant extrinsic evidence, yes. It just wasn't enough to sort of push something in the end zone. Yeah, well, it's not necessarily that case. It doesn't have to be that the extrinsic evidence actually pushes you into the world in which it is now unambiguous in favor of, for instance, long points. It could very well be that the extrinsic evidence would need to be still weighed and considered. And here both sides have put forward extrinsic evidence. I don't believe that the appellee's extrinsic evidence is, in fact, relevant. But if there were multiple, if both parties had relevant extrinsic evidence, then under the Tara case from the Ohio Supreme Court that just came out this year, both sets of extrinsic evidence would need to be weighed by the fact finder rather than just the presumption going against the grantor. But how does that work mechanically? Do you go to the judge and say, hey, there's enough to go to a jury, you don't apply the presumption? Or do you give the presumption to the, you don't give the presumption to the jury to think about either, do you? No, the presumption would only come into play in the event there were no extrinsic evidence on either side. So if it was an ambiguous document and neither side had extrinsic evidence, then the presumption would come in favor of being construed against the grantor. But we obviously don't have that situation here. So your argument here is that it is ambiguous? Well, yes and no. The argument is it's certainly not unambiguous in favor of the appellees in this case. I do, however, believe that actually on the record before the court, there is certainly enough for it to be considered unambiguous in favor of appellants in this case. I mean, if the utility easement is considered and it's incorporated by reference, surely it would apply to both tracts of land because you could just look at the utility easement and, by the way, it wouldn't make any sense for a utility easement to only apply to one of the tracts. So then it would just be unambiguous. It applies to 363 acres, right? Right. So it would be unambiguous in your favor, I take it, right? Yes, yes, exactly. So in this instance, what you can do, I will say Ohio case law is a little unclear on this, but looking at the terror decision, what you can see is there is extrinsic evidence that a court would consider after a finding of ambiguity. We're not in that world. There's actually extrinsic evidence that when it is being used to consider the special circumstances surrounding the document, that extrinsic evidence can come in before there has been any determination of ambiguity versus unambiguity. When the words of a deed point to a particular example of something in the world, you know, the easement, the coal seam, the A easement that the electric company has, I mean, it would seem to raise the question of, you know, what is the particular thing that these words are pointing to? They're not descriptive in the usual sort of more conceptual sense. They're pointing to a particular thing. What is it? Right? Exactly. Yes. And so, I mean, like this, the right-of-way for the electric company, the yellow document. So where, like, where did you all get that? Is that in one of these, like, big books in the, you know, the county office or whatever? Where is that? So that actually is held by the Belmont Electric Right-of-Way. It's not recorded of record in the same way that a deed would be had, but it is still available, which is how we received it. But the authenticity of that document, is that in question at all? That is not in question, no. So the bottom line is you want us to find that it's unambiguous and in favor of your client. Yes. But your backup is, if it is, and to do so, you want us to say the district judge was wrong and not considering this other evidence. Yes. Okay. But your backup or your alternative is that if we find in considering this other evidence that it is ambiguous, then you're asking us to send it back. Yes. And that then would be, then the question of what it really means would be submitted to a jury. Yes. And that's what the Supreme Court of Justice suggests. I'm trying to figure out what, and I think maybe Judge Nabandian was hinting at this earlier, what does a jury really do? There are no witnesses that are available that can testify what somebody meant. It's either, it's really all legal questions as a practical matter. Well, and so thus I would say that it is unambiguous as a matter of law in our client's favor. But this unfortunately does happen quite a bit with older property documents where there are no individuals that are necessarily going to testify. But when we put it into the world of ambiguity under your hypothetical, what the jury would be allowed to consider is extrinsic evidence from both sides. And so at that point, then, there would be other potential documentation that would come in and both sides have presented that. So you say if this goes to a jury, there is more evidence than what we've seen? Well, so no, it would be the same evidence that you would see. Why wouldn't we decide whether a piece of evidence that isn't testimony makes one interpretation better than another? I don't understand. I mean, what's your understanding? Is that, I mean, nobody's testifying, as Judge McKeague points out. So what does a jury, why would a jury have a role in determining the significance of these pieces of evidence for interpretive purposes? Well, so this court would be the one who would determine if it was unambiguous in one way or the other, obviously. And so in our argument, we believe that it is unambiguous in favor of long-point energy. Full stop, there is no need for a jury. If it were the case, though, that the court determines that there are two potential reasonable constructions of the document, then just under Ohio law on Tara v. Rice, that goes to a jury because a fact finder has to be the one to weigh the competing evidence. It's a role for the fact finder. I guess it could be... There's a model jury instruction in Ohio on this exact issue, right? I mean, there's a, I've done litigated this kind of case before. I mean, for example, assume that the 20-year, that the Perkins transfer 20 years later in the 60s is relevant extrinsic evidence. The jury would have to assess whether their failure to put the exemption in that transfer suggested that they thought that it wasn't included, right? Theoretically, yes. You probably dispute it. You probably dispute the relevance. You probably say it's not contemporaneous with the document. There's all kinds of arguments you would make. Yes. But if it came in, the jury, I assume, would just look at it and somebody, your attorneys would say, this shows that the Perkins, you know, thought that at the time, this didn't have an oil and gas exemption, right? Yes, yes. And they would weigh that, I take it. Yeah, the jury would look at the competing documentation, not competing testimony, admittedly, but competing documentation, the extrinsic evidence surrounding it, and because they need to be the fact finder in an ambiguity setting. Well, you could have testimony if the relevant parties were alive. That's true. Right? Yes. You could have somebody testify that they, you know, now there is a caution in that instruction about unexpressed intentions are not supposed to be considered. Yes. You're not supposed to say, I thought at the time this, but I didn't tell anybody. Yes. Right? But if they were alive and talked to somebody else about it and whatever, I assume that jury could consider that. The jury absolutely could, yeah. In this particular instance, because Ms. Freidinger... Can I ask you one question? If the Perkins, what is the other, what is the extrinsic evidence? I mean, I take it we could resolve the case as a matter of law on parole evidence because it would just be a matter of if there was a disputed fact or not. In other words, let's say that we thought that the Perkins, that the transfer 20 years later wasn't relevant extrinsic evidence. Yes. What other, I mean, can we just say, like any other summary judgment question, there's no disputed question on the parole evidence? Yes, absolutely. So, and may I continue past the... Yes. Thank you. So if there were a situation where there had been a determination of ambiguity and then only one side, in this instance Longpoint Energy, put forward relevant extrinsic evidence, then yes, this court could, as a matter of law, because there is no competing evidence, rule at that point in favor of Longpoint. It would only be in the instance where there was competing extrinsic evidence that the court found to be relevant that a fact finder would need to get involved. Does it have to be contemporaneous or could it be 20 years later? So I don't believe the subsequent deeds have any relevance whatsoever. And the courts look at this, the prior deeds here tell you what Ms. Freidinger was suggesting about what she was reserving versus what she wasn't reserving. That's kind of the referential language, referring. You can't refer to something that's never happened. Exactly. Yes. You talk about, I just want to make sure I understand, you talk about two different kinds of extrinsic evidence. Evidence that explains what it is this document is apparently referring to. Yes. And then it could be extrinsic evidence about just, you know, I mean, just sort of what does a particular word mean in the kind of usual descriptive sense and what were they thinking and then off to the races. Yes, yes, exactly. But in this instance, actually, to Your Honor's point, the source deed is not even extrinsic evidence, right, because it actually is referenced in the 1948 deed and thus under Ohio law is fully incorporated into the document. Is the right-of-way in any different posture in that respect? I don't believe it is, actually. And I will say that the incorporation by deed is clearer under Porterfield, but the Belmont right-of-way is something that's easily discernible, which is what we care about for being able to incorporate by reference. Can you determine what the document is? We obviously can because the Belmont right-of-way covered the same property and is being referenced here. So arguably the Belmont right-of-way itself is not extrinsic evidence, but is actually also incorporated. So the red brief, a lot of the red brief in this case is devoted to saying we shouldn't reach the merits of various things. Yes. Did you, I mean, what's your response to that briefly and specifically did you timely bring to the district court's attention the right-of-way and I'll just ask now and also the school exemption in the paragraph that follows the right-of-way, et cetera, right-of-way, oil and gas exception, et cetera, part of the deed? Certainly. And so there are, if you look, basically three main arguments that we put forward. The Belmont electric right-of-way, even in the appellee's brief on their little court that they have is listed as being preserved. So there's no argument that that wasn't preserved. On the source deed arguments, we did reference that the source deed is in the summary judgment record. That's how it's before the courts. There was a discussion of where the, of the source deed in terms of how it was part of the chain of title and whatnot. And then mostly though for the source deed discussion, it primarily relates to the argument on being unambiguous in our favor. So I'm talking about the 47 deed? Yes, the 47 deed. Why is that very important here? So I think it is important because the district court really read Ms. Freidinger to be saying that she independently crafted this first tract. It's a cut and paste thing? Yes, yes. And if you look, the fact that she put... I get that. What about the school? Did you ever argue based on that last paragraph? The court thinks this is like hermetically sealed, kind of, between first tract and second tract. Yes. And so your argument is, hey, the second exceptions after the second tract heading, that's actually applying to both. Yes. And there's yet another paragraph which talks about, hey, I'm not conveying the land for the school, which was referenced in the 47 deed, right? Yes. And that's part of the first tract. It is. So did you argue to the district court, hey, judge, this whole idea of first tract references end at the all-caps second tract in the deed? That can't be right because, among other things, you have this exception for the school property, which is part of the first tract. Is that an argument that's preserved here? So the argument that the structure of the deed shows that it is unambiguous in our favor. Did you talk about the school to the district court? I don't believe that express argument is in the brief. I'll submit a 28-J letter if I prove to be incorrect on that. No, you don't have to. It's okay. If I may, Your Honor. You can wrap up. 30 seconds. Certainly. I do think that this goes to the issues versus arguments idea. The fact is that the general thrust of our argument down below was that the overall structure of the deed is in our favor. The focus on that last paragraph, which to Your Honor's point is absolutely correct, it applies to both the first tract and the second tract, is part of that argument. I think it would be a strange world where a contract, which should be construed as a matter of law, is somehow construed incorrectly merely because there was a focus. If there's no further questions. Great. You'll have your rebuttal while we hear from the appellees. Thank you, Your Honor. May it please the court, Kevin West on behalf of Gulfport Energy and Gulfport Appalachia. Mr. Baranzi represents Rice. Mr. Wilson represents- Are you all breaking it up today? I'm going to do 11 minutes, Your Honor. If the court please, Mr. Baranzi will argue for four minutes. Mr. Wilson has graciously ceded his time to Mr. Baranzi and me. Very well. Go ahead, sir. If the court please, we would respectfully request that the court affirm the summary judgment of the trial court ruling that the first tract did not convey the oil and gas rights, that the only reservation occurred with regard to the second tract. And the reason we believe that is correct is based upon the structure of the deed. Is that what the district court said? Yes, Your Honor. We think that the district court got it right. You look at the deed, there's a description- So there's no utility easement over the first tract? Well, Your Honor, that- That doesn't make a lot of sense. That is not mentioned. I think that there are a number of reasons that could be. First of all, utility easements intrinsically are not as formal as a deed. This particular utility easement was not recorded. I think as Longpoint has conceded, that it was just found in the records of the Belmont County Utility District. But it's authentic, as I asked earlier. The authenticity is not in dispute here. We've not challenged its authenticity, Your Honor, but- Has anybody laid this out on a drawing to see where these utility easements would have gone? What I'm thinking, and so tell me if I've just got this wrong, you've got the smaller tract and the bigger tract. And if they're next to each other along the road, it would only make sense that the utility easement covered both. Does that make sense? It does, Your Honor. Now, if one tract is behind the other, and there's no reason to have utilities back there through an easement, then you might come to a different conclusion. And that was one of the things I was going to argue, Your Honor, with regard to the utility easement, that we don't know, quite frankly. There's nothing in the record as to where the utility lines were located. Why doesn't somebody just look at a map to see if these two parcels are both along the  And that's something that could be done. It's not in the record, Your Honor. It doesn't really matter. If you look at the utility easement, it covers both tracts, right? Well- I mean, I understand the argument is we can't look at it. They had an entitlement, in other words. But 363 acres. We can't look at it, and we don't know what the grantor was thinking. Obviously, if you look at the structure of the property descriptions, in tract one, there's a property description. In tract two, there's a property description. In tract one, there's a coal reservation. In tract two, there's a coal reservation. And then when you get to the oil and gas reservation, and the utility easement, it's only under tract two and not under tract one. We understand that. Go ahead. No, you go ahead. But if you look at the utility easement, it's 300 and something. I mean, it's the whole property. It's 363 acres. Granted, Your Honor. So, I mean, the electric company's entitlement went to the entirety of this parcel, first tract and second tract. That's correct. But we're focusing here on the oil and gas reservation. Well, but we're focused on what does all this mean, right? And so- We are, Your Honor. So the district court, as I suggested earlier, I mean, the district court seems to say that based on the structure, the exception that is under the first tract description is the only exception that applies to the first tract. And then under the second tract, the two or really three exceptions there, if you count that last paragraph that talks about the school, that all of the stuff under the second tract description applies only to the second tract, right? Correct. That's the reason. And that's your argument? That is, Your Honor. Wait, wait. I'm sorry. I'm sorry, Your Honor. Are you arguing that the last paragraph with the school only applies to the second tract? I thought you agreed that one applied to both. We never addressed the school. That never came up. That was not ever argued by Longpoint in the court below. Do you think it only applies to the second tract? I'm just asking you here. I think that it would only apply to the second tract if it's under there. Yes, Your Honor, because I think based on How does that make any sense? Your Honor, the way that the, if the court please, the way that the district court got to its decision in what we're suggesting is that there were coal reservations in both the first and second tract. So the parties, if they had intended for these other reservations, the oil and gas reservation, the utility reservation, I don't know why it was not included in the first tract, but See, that is explained. I assume you have a response, but the, you know, the argument is, well, that was because they cut and pasted the source deed. And with regard to the source deed, there was an argument That is, I mean, that's why, right? It is, that stuff is cut and pasted. If you look at Not in the sense that we know it now. Not, yeah, they couldn't do that. But it was retyped, right? Right. But if you, I think that if you're talking about the source deed, number one, the reason for a reference back to the source deed is by statute. The reason that statute exists is to assist title examiners in determining whether the meets and bounds description is correct. The Porterfield case, which is relied upon by Longpoint, if you look at it, there is former grantor language there. And if you go on two years later to the Hildegast case, or Hildegast case, which not only do we cite, but Longpoint cites, two members of the same panel that were on the Porterfield case in that case ruled that that former grantor language was what distinguished that particular case and why you would go back and look at the source. But, I mean, surely it's not the law, I mean, sure, positive form, surely we do construe deeds by reference to prior deeds. They build upon each other, right? As, they're progressive in nature. They can, Your Honor, but I think that with this particular situation, with the situation with the oil and gas, excuse me, with the coal reservation, we think that that makes, we think that the district court got it right and said that's the distinguishing feature here, which demonstrates that the oil and gas reservation was only meant to apply to the second track. Those are two different coal seams, correct? Number 8 Pittsburgh and the 6 foot seam? They may or they may not be. So if a court were construing, say, what the number 8 Pittsburgh thing is, and there was a formal conveyance, maybe not recorded in the books, but, you know, similar to the electric company conveyance, we'd go look at that, wouldn't we? We can't in the four corners, it's referring to a particular thing, the number 8 Pittsburgh seam. We'd have to go look at this conveyance that had earlier granted that seam to somebody else. Is that fair? Yes, if it said, and I mean, it typically would say the number 8 Pittsburgh seam. Right, so like the one we have here. So why wouldn't we do the same thing with the electric company easement? Well, with regard to the electric company easement, as I said, there could be all kinds of different reasons why it was included for the second tract and not the first tract. Well, but, I mean, the question is, I mean, the document refers to something else, the number 8 seam. There's another conveyance that describes what that is. So we'd go look at that. And that's not, you know, that's using extrinsic sense in the sense, extrinsic evidence in the sense that your friend mentioned that it's telling us what these words mean because they're kind of like, they have this special meaning in this deed. So why wouldn't we do the exact same thing with the electric company? And I guess our position, Your Honor, is even if you do do that, that it does not create an ambiguity just based upon the structure. Well, why doesn't it actually strongly support, I'll be candid with you, why doesn't it very strongly support their meaning? It's one sentence, so it says accepting also the right of way for the electric company. There was something about a phone line, I think, as well. And gas rights, okay? So you have a prior clause in the same sentence, which when we look at this other thing, the yellow paper, would seem to apply to the entirety of this parcel in the same sentence, just two clauses before. Why in the world would we think that only that clause, I mean, now we've broken the seal the district court has between, you know, why would we say, oh, well, that can only refer to, I mean, the oil and gas thing, that can only refer to the second tract because of the structure of the document. I mean, the structure's been obliterated by the first clause. But there's no reference, there's no reference that specifically ties the oil and gas reservation to the first tract. If you look at, we cite at page 16 of our brief, several Ohio cases that talk about how descriptions customarily were done during that time period in Ohio. And if you mean to refer to a particular tract, you actually, you're more specific and say, this is what applies to this tract, this is what applies to another tract. So why doesn't the fact that it's coupled with the utility easement tie it together? Well, you know, that gets to the issue that I've raised as far as the intrinsic nature of utility easements. Possibly the, as Judge McKeague has indicated, maybe there's, maybe the parties at that time knew where the utilities were actually were located so that they didn't think that it even was relevant to the first tract. I have a question about, just real quick, if this were ambiguous, what is, what is the, what is the extrinsic evidence that supports your position? The 1967 deed, your honor, where the Perkins. Okay, what I was talking about earlier, right? Yes, your honor. Vance? Correct. Anything else? No, that and the fact that. Why is something that was done 20 years later relevant to this dispute? Because it shows that based upon the conveyance that we're talking about here, that the Perkins, the folks that ended up being conveyed tract one, believed that that conveyance included the oil and gas rights. Why isn't that kind of an unexpressed intention as between the Perkins and the original Grand Tour? In other words, if I go off and tell somebody else, oh, this is what I thought, isn't that essentially the same thing? Because it doesn't have anything to do with the meeting of the minds between the two actual parties. I think that, your honor, but I think that also you have to take in consideration in Talbot versus Ward, which is the case that talks about the presumption. And the presumption is you construed the reservation against the Grand Tour. And in that particular case, even though I believe it was conflicting extrinsic evidence, there were questions asked about, do you have a, is that a jury question then? In that particular case, there were instructions as to how to rule based upon the presumption. Okay. All right. Thank you. Do you agree with Mr. Hogan that if we find the deed is ambiguous, that it goes back and there's a jury trial? If you find that, I don't, I think two things, your honor. Number one, I think that the extrinsic evidence that I have mentioned would have to be considered also, the 1967 deed, number one. And number two, I think for the reasons set forth in Talbot versus Ward, we believe that without getting to submitting this case to a jury, that based upon the presumption, you could roll in our favor. Okay. You have any more questions? Okay. We'll let you off the hook. Thank you, Mr. West. For sure. May it please the court, my name is Chris Baranzi, I represent FLE Rice Drilling D, LLC. I'd like to talk for just a few minutes about the bonafide purchaser defense that's been raised by appellees. It's a complete defense to all of Longpoint's claims, and it fits the facts of this case very well, despite Longpoint's arguments to the contrary. To understand the bonafide purchaser defense. To your client, this, I mean, the availability, so to speak, of this argument. I'm sorry, your honor? I mean, what's, I mean, does this get everybody, I mean, is, if we agree with you, who wins among the parties? Appellees. All of them? Yes. Okay, go ahead. To understand the bonafide purchaser defense. And this is an alternative ground for affirmative? Yes. Yes, your honor. Mr. Court didn't rule on this one, right? Did not get to this. Okay, but go ahead. So to understand the bonafide purchaser defense, we have to start with Ohio's recording statute, which is found at revised code 5301.25a, and if I may paraphrase, it says that if there is a conveyance of an interest in real estate that is unrecorded, that unrecorded conveyance is fraudulent as it relates to a subsequent purchaser of a conflicting interest in that real estate, if that subsequent purchaser did not know about the prior conveyance. What if the conveyance is mentioned in the very deed at issue? The unrecorded? It all goes to knowledge, your honor. Right, so I mean, if a deed that's part of the chain for the bonafide purchaser refers to a conveyance that is not recorded, but that one can chase down, does that put the person on notice? Maybe I better go look at what that thing says? You're referring to the Belmont County? I'm just saying generic, you know? If it's not recorded, no, you cannot be charged with notice of an unrecorded document. I guess, no, but I mean, what I'm getting at is, you know, you are charged with understanding fairly what the prior deed means, right? Not necessarily, your honor. Really? Yes. Like if somebody, let's say there's a document that says what the number eight Pittsburgh thing is, and so somebody who's, you know, one or two conveyances downstream of the 48 deed wants to go dig, is digging up a bunch of coal, and the punitive owner of the number eight seam says, wait a minute, wait a minute, you know, it says number eight seam, and this, you know, description of it was readily available in whatever place, not recorded in a formal sense, but readily available, you knew that thing is down there, and you should have known. You were on, like, inquiry notice or something. I mean, doesn't that bear on whether someone is just, you know, sort of an innocent victim in all of this? Yeah, I certainly answer that question, although I do think it's not exactly what the bona fide purchaser defense is about. But as to your question, if this case was about interpretation of the number eight Pittsburgh seam of coal, then maybe it would be appropriate to afford to extrinsic evidence, such as prior deeds, later deeds, whatever might explain the intent of the parties. This case is not about understanding a specific term of art, like the number eight Pittsburgh seam of coal. In Ohio, a deed is nothing more than a contract, so we assume that the parties expressed their intent through the language of the contract. So the court's job is we look at the four corners of this document, and here, in the 1948 deed in particular, we find that there's a transfer of a piece of property subject to a coal exception. Do you agree that the four corners of the document include, there's some terminology problems here, I suppose, but include documents incorporated by reference? I don't consider documents incorporated by reference to be, quote, unquote, extrinsic evidence, okay? I think they're just incorporated into the document. If it was clearly incorporated by reference, then it certainly is part of the document. But a mere reference to satisfy a statute that requires a reference to a prior deed is not necessarily incorporating all of those documents that are referred to. There's requirements in Ohio with prior deeds, prior transfers, just to document the chain of title have to be referenced. That doesn't mean that every term of those documents needs to be consulted in understanding the four corners of a particular deed. And in this particular deed, the 1948 deed, the court and any party would look at the two transfers. You got one transfer subject to a coal exception, it's very clear. Second transfer subject to another coal exception, and then also subject to some sort of utility easement and an oil and gas exception. In fact, it's kind of begging the question of whether that second paragraph is doing just that. And I mean, if it's referring to a bunch of things that are not described but seem to be particular things in the world, then, I mean, anybody would go look and make sure that, hey, none of this stuff is what I think I own or what I'm purchasing. In other words, why is your client a BFP in this case, other than the fact that you read the deed in a certain way? So the bonafide purchaser defense is slightly different than this question about the public utility easement and what's referenced in the 1948 deed in that respect. The bonafide purchaser defense says that if you've got a subsequent purchaser of an interest that doesn't know about the prior conveyance, they win. In this case, the two conflicting conveyances is, number one, the deeds to Long Point Energy from the Frutigrares. There were five deeds, they were all created in 2019. To be clear, they didn't exist before 2019, but they all had effective dates backdating Long Point's interest to 2013, all five of them. Also, perhaps not coincidentally, in 2013- But I mean, there's backdating on both sides. It seems irrelevant, but you're in the red, so you might want to really focus in here. Yeah, there's no backdating by Long Point, excuse me, by Gulfport or Rice that affects an interest that's at issue in this case. There was a backdated assignment between the two of them. But the point for the bonafide purchaser defense is that Long Point is claiming its interest in 2013. Rice is claiming its subsequent leasehold interest in 2013 and 2014. And it's at that time we had a ruling in the Walker versus Shondrick Now case, which conclusively established these minerals in the names of the lessors that Rice and Gulfport have their interest from. And in the competition between who has the interest and the two conflicting property interests, the leasehold and Long Point's mineral interests, it's the leasehold that's the subsequent bonafide interest. What decision and what case are you talking about? Sure. None of this is raised judicata, right? It's the Walker versus Shondrick Now case, your honor. Is that about this parcel? Yes. No, it is not raised judicata. It doesn't specifically deal with this parcel. But the Walker versus Shondrick Now case- Is that just a BFP precedent you're citing? It doesn't specifically deal with bonafide purchaser, but it establishes that the Dormant Mineral Act in Ohio, it's the first case where an appellate district court in Ohio finds that the 1989 version- So, okay. This is another argument the district court didn't reach. That's why I'm flummoxed by this, right? Yes, they didn't get to reach it because- Okay. No, I get it. Some of the judgment was granted another- All right. I see I'm a little past my time. Any other questions? All right, thank you for your argument. We'll hear rebuttal. Thank you, your honor. Sure. Can I ask you a question about, this goes to the Cole example that Judge Keflan just used. Certainly. Wouldn't that be problematic, wouldn't his example be problematic under the facts of Tara? In other words, Tara says it's extrinsic evidence to refer to, to try to figure out what's commonly known as the Utica Shale thing or whatever, right? Yes. The number eight Cole scene, it seems to me, is not an incorporated document, but is possibly extrinsic. I mean, this was Tara's four to three. It's a closely decided case, but the majority seems to think that would be extrinsic evidence, right? If it is something that is not a, well, no, not necessarily, actually. So there's two different ways that extrinsic evidence get used in Ohio. So one of them is after there is a full-blown finding of ambiguity altogether. In that instance, there does need to be a fact-finding determination by a jury. But actually, to Judge Ketledge's example, that would be the extrinsic evidence that actually can come in in advance of that determination to determine, using extrinsic evidence, whether there is ambiguity or not. And the reason is that there's this- So a document that's incorporated by reference, is that extrinsic evidence? That is not extrinsic evidence. Okay. Yeah. Well, any document? Any document under Ohio law that is incorporated by reference in a contract itself is not extrinsic evidence. Okay, a letter, anything like that? Well, so if you look at the KeyBank case and the, I think it's Volvitz, basically there has to be a sufficient amount of information in the document itself to be able to identify it. But yes, once that happens, under Ohio law- It's incorporated into a complaint or whatever, right? Yeah, it's as though it's part of it. What about- If it's a contract, if it's incorporated by reference, it's part of the contract. It is, yes, exactly. Okay, but the Cole scene, if there wasn't some document that described the six foot scene, whatever the heck that is, and that's just sort of walking around knowledge of the individuals, then we're in the second kind of extrinsic evidence, not the first. Not necessarily. You had to bring them in to say, oh, everybody knows that's what it means. So in that instance, Your Honor, we're actually, I think, so because the prior incorporated documents are not extrinsic evidence, that was not one of the two categories I was referring to. That would almost be a third. So you have incorporated by reference. That's not extrinsic evidence. You say that right away fits that. I believe it does. And there's nothing in- Just keep going. Sure. And then you have your, there's been a finding of ambiguity. Now both sides can bring in. That's also- That's just, we don't know what these words mean. It's not referring to something. It's just like bad craftsmanship or something. There could be, it's susceptible to two or more reasonable interpretations. Some bad, you know, we don't know what it means. Yeah. It's not referring to something we've got to look up. It's just who knows what the heck that means. But the character of the evidence is, you're talking about the character of the evidence is extrinsic, meaning it's just a conversation that you and I had before we signed the document. Well, so that would be a form of, I mean, yeah, that's- That would just be, but extrinsic evidence, okay, never mind. Go ahead. Okay, okay. So the second category, the one that I'm talking about with the colseum reference, is slightly different. That's where Ohio law allows you to use extrinsic evidence to establish special meaning of something that isn't incorporated by reference. So the Pittsburgh colseum, for instance, let's say that that was the term. That doesn't go to a fact finder necessarily. Instead, extrinsic evidence could be brought forward to show, what did everyone mean when they wrote Pittsburgh colseum? That could be parole evidence? Well, extrinsic and parole are often sort of intermixed between- But parole's a subset of extrinsic, presumably. Yes, but this is one where, so long, obviously, parole evidence needs to actually be in line with the documents, right? It can't be something that contradicts the documents. Okay, so where does the evidence in TARA fit in? I took that to mean that even though that was referenced in the document, that that was extrinsic evidence of the kind that would only come in if it were, if there was an ambiguity. So in TARA, because there is competing extrinsic evidence, that's why it goes to a jury. And so if it were the case that there was only one form of extrinsic evidence- All right, but that's moving the ball a little bit here, because I'm saying that the idea was, even though it said commonly referred to as the Utica, whatever, that wasn't incorporated necessarily into the document, what that shale thing was. You had to go out and prove it. Yes. And the four-person majority said, that's extrinsic evidence. Now the dissenters say, no, it's just like using the dictionary or whatever. It wouldn't be any, it's not, but of course they lost. So that would be extrinsic evidence. The right-of-way in this case is incorporated by reference, I take it as your argument. So the TARA case wouldn't on the facts, okay. Yes, the right-of-way. But what I'm saying is the coal thing might be closer to what TARA was about, right? Because the common, it doesn't say commonly known as, but the number eight coal seam, we might not know what that is without looking at some geologist report or something. Exactly, yes. But the Belmont Electric right-of-way, because it is a separate document rather than just having to go and look at geological records, would be- To the chase, I assume your argument here is that there is not competing extrinsic evidence. I don't think there is, in the sense that there's competing relevant extrinsic evidence. I think- To the extent we find that the district court erred in not considering certain things, your argument is they all favor your client. Yes, and that frankly the source deed is not even extrinsic evidence, it's incorporated within it, and then the structural argument works in that sense. And then on top of it, the Belmont right-of-way would also be surrounding circumstances. If we follow your argument then, even if we find it to be ambiguous without the extrinsic evidence, we consider the evidence that you say the district court should have considered. It can only lead to one conclusion, doesn't have to go back, you win. Yes, it does not- Is that it? Yes, it still needs to be remanded for damages purposes, but for the purpose of how to construe the actual 1948 deed at issue, that can be- Well, it has to be, what about the alternative grounds? There's all these defenses that- Yes, alternative grounds. They would be entitled to make those arguments. Absolutely, and those are things that I think the trial court does need to weigh before, I mean, it's something where they never reach those issues, and so those could be other arguments that they- So just to be clear about the extrinsic evidence that you say we ought to consider for purposes of determining what the deed is referring to, basically? Yes. Right? Yes. You say we ought to look at the source deed to, what, to understand that it's kind of a cut and paste job in your view? Yes. In the right of way? Yes. Anything else? Those are the two. The only clarification I would have, Your Honor, is that I technically, under Ohio law, don't believe those are extrinsic evidence, those are actually incorporated by reference, which- Don't they sometimes say, like, you can consider extrinsic evidence to determine what the incorporation was? Yes, yes. I understand what you're saying.  Maybe there needs to be another term for this, like, first deed. I think it would help a lot if they clarified a little bit more on that front. All right, anything else? All right, well, we thank you all for your arguments. The case will be submitted.